IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-32957 |
| | § | (Chapter 11) |
| ENERGY PARTNERS, LTD., *ET AL.*,[1] | § | (Jointly Administered) |
| | § | |
| DEBTORS. | § | Hearing: July 29, 2009; 10:30 a.m. |

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO ENTER INTO PROPOSAL LETTER WITH GE ENERGY FINANCIAL SERVICES, INC. REGARDING THE DEBTORS' PROPOSED EXIT FINANCING FACILITY**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 29, 2009, AT 10:30 A.M. IN COURTROOM 600, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BEFORE THE SCHEDULED HEARING. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**TO THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE:**

Energy Partners, Ltd. ("EPL" or the "Company") and its affiliated debtor entities, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this *Emergency Motion for Authority to Enter Into Proposal Letter with GE*

---

[1] The Debtors include Energy Partners, Ltd., EPL Pipeline, L.L.C., Nighthawk, L.L.C., EPL of Louisiana, L.L.C., Delaware EPL of Texas, LLC, and EPL Pioneer Houston, Inc.

*Energy Financial Services, Inc. Regarding the Debtors' Proposed Exit Financing Facility* (the "Motion").  In support of the Motion, the Debtors state as follows:

## JURISDICTION, VENUE, AND PROCEDURAL HISTORY

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion concerns the administration of the estate and, therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On May 1, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code"), commencing the above-captioned cases (the "Cases").  Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. Three official committees have been appointed in these Cases.  On June 1, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee") to represent the interests of the Debtors' unsecured trade creditors.  On June 4, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Noteholders (the "Unsecured Noteholders Committee"), comprised of certain members of the Ad Hoc Committee (as defined below), to represent the interests of the Senior Notes.  Subsequently, on June 29, 2009, the Office of the United States Trustee appointed the Official Committee of Equity Security Holders to represent the interests of the holders of EPL's common stock.

4. The statutory predicates for the relief requested herein are Bankruptcy Code § 363(b).

**STATEMENT OF FACTS**

**A.     Business Overview**

1.     Founded in 1998, EPL is an independent oil and natural gas exploration and production company.  The other Debtors are wholly-owned subsidiaries of EPL.  The Debtors' current operations are concentrated in the shallow to moderate depth waters in the Gulf of Mexico, as well as the deepwater Gulf of Mexico in depths less than 5,000 feet.  As of December 31, 2008, the Debtors had interests in 24 producing fields, one field under development and two fields under evaluation, all of which are located in the Gulf of Mexico region.  EPL maintains corporate offices in Houston, Texas and New Orleans, Louisiana.

2.     Additional information concerning the Debtors, their financial condition, and results of operations, on a consolidated basis, can be found in EPL's annual, quarterly, and current reports filed with the Securities and Exchange Commission ("SEC"), as well as in EPL's other recent SEC filings, which can be accessed at www.sec.gov and at EPL's website, www.eplweb.com.  Pleadings filed in these Cases may be obtained from the website maintained by the Debtors' claims and noticing agent at http://chapter11.epiqsystems.com/epl.

**B.     Existing Debt Structure**

**The Prepetition Revolving Credit Agreement**

3.     On April 23, 2007, EPL entered into a credit agreement (the "Credit Agreement") among EPL, as borrower, the lenders party thereto (collectively, the "Prepetition Secured Lenders"), and Bank of America, N.A. ("BofA"), as Administrative Agent, L/C Issuer and Collateral Agent. The Credit Agreement provided working capital for the Debtors and had an initial borrowing base of $200 million.  The borrowing base is subject to redetermination based upon, *inter alia*, the proven reserves of the oil and natural gas properties that serve as collateral

for the loans made under the Credit Agreement, as set out in the reserve reports delivered to the Prepetition Secured Lenders on a semiannual basis. EPL's obligations under the Credit Agreement are guaranteed by the other Debtors and secured by a lien on substantially all of the Debtors' operating assets.

4. In March 2009, BofA notified EPL that the semi-annual redetermination of the borrowing base under the Credit Agreement had occurred, resulting in a new borrowing base of $45 million, a decrease from the prior base of $150 million. EPL had $83 million outstanding under the Credit Agreement, resulting in a deficiency of $38 million and an obligation by the Debtors to repay the borrowing base deficiency. EPL proposed an installment repayment plan to BofA, which BofA declined to approve. On March 24, 2009, EPL received notice from BofA requiring the lump sum payment by EPL of $38 million by April 3, 2009. On April 3, 2009 a majority in interest of the Prepetition Secured Lenders agreed to extend the time period for the repayment of the borrowing base deficiency until April 14, 2009. A further extension of the obligation to repay $38 million was granted by the Prepetition Secured Lenders until May 1, 2009.

## The Senior Notes

5. On April 23, 2007, EPL completed an offering of $450 million aggregate principal amount of senior unsecured notes, consisting of: (a) $300 million aggregate principal amount of 9.75% senior notes due 2014 (the "Fixed Rate Notes") and (b) $150 million aggregate principal amount of senior floating rate notes due 2013 (the "Floating Rate Notes", and together with the Fixed Rate Notes, the "Senior Unsecured Notes").

6. EPL is required to pay approximately $45 million in interest annually on the Senior Unsecured Notes. Approximately $17 million in interest due on April 15, 2009 was not paid by the Debtors.

### The 8.75% Senior Notes

7. In addition, EPL currently has $4.5 million aggregate principal amount of 8.75% senior unsecured notes due 2010 outstanding (the "8.75% Senior Unsecured Notes" and, together with the Senior Unsecured Notes, the "Senior Notes"). The 8.75% Senior Unsecured Notes are *pari passu* with the Senior Unsecured Notes. EPL's obligations under the Senior Notes (currently totaling approximately $454.5 million) are guaranteed on a senior unsecured basis by all of the other Debtors.

**C. The Pre-Negotiated Plan Structure**

8. As a result of liquidity constraints and other negative events, including those described above, the Debtors undertook an effort to consensually restructure their balance sheet. To this end, in March of 2009, the Debtors commenced negotiations with an ad hoc committee (the "Ad Hoc Committee") comprised of institutions holding over 66 and 2/3% in principal amount of the Senior Unsecured Notes. As a result of these negotiations, on April 30, 2009, the Debtors and the members of the Ad Hoc Committee entered into a Plan Support and Lock-Up Agreement (the "Plan Support Agreement"). The Plan Support Agreement and the term sheet attached thereto (the "Term Sheet") provide for the Debtors' financial restructuring to be effected through a pre-negotiated Plan, which the members of the Ad Hoc Committee have agreed to support.

9. In accordance with the Plan Support Agreement, the Debtors filed their proposed Disclosure Statement and Plan with the Court on May 15, 2009. On June 16, 2009, the Court

entered an order (Dkt. No. 231) approving the Disclosure Statement, with certain modifications, and authorizing the Debtors to solicit votes from certain parties in interest. The proposed Plan contemplates:

    a. Conversion of EPL's outstanding Senior Notes into 100% of reorganized EPL's issued and outstanding common stock upon its emergence from bankruptcy;

    b. Current EPL stockholders would receive warrants exercisable for 12.5% of reorganized EPL's common stock as of the Plan Effective Date (as defined below);

    c. Secured debt obligations under the Credit Agreement, representing approximately $83 million of indebtedness, will be unimpaired;

    d. Obligations owed to the U.S. Department of the Interior, Minerals Management Service (the "MMS") will be handled in accordance with a settlement reached between the Debtors and the MMS and as set forth in the Plan; and

    e. 100% cash recovery for unsecured creditors to be paid in accordance with the terms set forth in the Plan.

**D.  The Debtors' Proposed Exit Facility**

10.  Section 4.08 of the Plan contemplates EPL and certain other of the reorganized Debtors entering into an exit financing facility (the "Exit Facility") on the effective date of the Plan. The Exit Facility will provide liquidity, *inter alia*, for working capital and other general corporate purposes following conclusion of the Cases. A portion of the proceeds is also expected to be used to refinance claims held by the Prepetition Secured Lenders.

11.  In the weeks preceding the filing of this Motion, EPL and its financial advisor, Parkman Whaling LLC, met with numerous potential lenders in an effort to obtain a commitment for an acceptable Exit Facility. As a result of this process, GE Energy Financial Services, Inc. ("GE Capital") presented the Debtors with the most attractive and feasible option reflected in a

proposal letter dated July 24, 2009 (the "Proposal Letter"):[2] a proposal for a senior secured first lien credit facility of between $70 to $100 million, subject to additional due diligence and the approval of GE Capital's internal credit authorities, on the indicative terms reflected in a summary sheet exchanged between the parties.

## RELIEF REQUESTED

12.  By this Motion, the Debtors seek authority to enter into the Proposal Letter and to pay GE Capital all amounts due under the letter pursuant to section 363(b) of the Bankruptcy Code. In accordance with the Proposal Letter, upon receiving Court approval, GE will have the exclusive right to arrange the Exit Facility for a period of 30 days (unless earlier terminated by GE or the Debtors).

13.  The Debtors propose to pay GE Capital the following amounts for its efforts under the Proposal Letter. Such amounts will be payable regardless of whether the Exit Facility is approved or closes.

> a.  *Expenses.* All fees and expenses incurred by GE Capital under the Proposal Letter (including, but not limited to, all reasonable costs and fees of external legal counsel, environmental consultants, reserve engineers, appraisers, auditors and other consultants and advisors, due diligence reports, escrow costs (if applicable), recording and transfer fees and taxes, title charges and survey costs) incurred in connection with the Proposal Letter and the Exit Facility (and the negotiation, documentation and closing thereof), together with the actual reasonable out-of-pocket expenses in connection with the conduct of GE Capital's due diligence.
>
> b.  *Underwriting Deposit.* Upon execution of the Proposal Letter, the Debtors will provide an initial underwriting deposit of $50,000 (the "Underwriting Deposit"), against which will be charged any amounts the Debtors owe GE Capital, including the expenses referred to in the immediately preceding paragraph. GE Capital may hereafter require the Debtors to replenish the Underwriting Deposit as a condition to GE Capital's agreement to continue to incur the expenses

---

[2] A copy of the Proposal Letter is attached hereto as **Exhibit "A."** The Proposal Letter incorporates by reference a Summary of Terms and Conditions (the "Term Sheet") that sets forth proposed terms and conditions for the Exit Facility. The parties consider the Term Sheet confidential in nature and, as such, have not filed the Term Sheet with this Motion.

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO ENTER INTO
PROPOSAL LETTER WITH GE ENERGY FINANCIAL SERVICES, INC.
REGARDING THE DEBTORS' PROPOSED EXIT FINANCING FACILITY**                **Page 7 of 10**
US 4722v.4

    described in the preceding paragraph. The balance of the Underwriting Deposit (net of the fees and expenses referred to in the Proposal Letter) will be (i) returned to the Debtors if GE Capital elects not to commit to the Exit Facility or (ii) applied to the fees owed by the Debtors at closing if the Exit Facility is approved and closes. In all other circumstances, GE Capital will retain the remaining Underwriting Deposit as a fee.

14.     The Debtors request that they be permitted to pay the fees and expenses detailed in the Proposal Letter in accordance with the terms set forth in the Proposal Letter and without further application to this Court.

15.     Further, the Debtors request approval of the indemnification provisions set forth on page 2 of the Proposal Letter. Such indemnification is a key aspect that GE Capital requires in order for it to pursue the Exit Facility, and contains exceptions for bad faith, gross negligence and willful misconduct. The proposed indemnification is as follows:[3]

> *Indemnification.* Regardless of whether the Financing is approved or closes, you agree to (a) indemnify, defend and hold each of GE Capital and its affiliates and the principals, directors, officers, employees, representatives, agents and third party advisors of each of them (each, an "Indemnified Person"), harmless from and against all losses, disputes, claims, expenses (including, but not limited to, attorneys' fees), damages, and liabilities of any kind (including, without limitation, any environmental liabilities) which may be incurred by, or asserted against, any such Indemnified Person in connection with, arising out of, or relating to, this Proposal Letter, the Financing, the use or the proposed use of the proceeds thereof, the Transaction, any other transaction contemplated by this Proposal Letter, any other transaction related thereto and any claim, litigation, investigation or proceeding relating to any of the foregoing (each, a "Claim", and collectively, the "Claims"), regardless of whether such Indemnified Person is a party thereto, and (b) reimburse each Indemnified Person upon demand for all reasonable legal and other out-of-pocket expenses incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuit, investigation, claim or other proceeding relating to any of the foregoing (each, an "Expense"); provided that no Indemnified Person shall be entitled to indemnity hereunder in respect of any Claim or Expense to the extent that the same is found by a final, non-appealable judgment of a court of competent jurisdiction to have resulted directly from the bad faith, gross negligence or willful misconduct of such Indemnified Person. Under no circumstances shall GE Capital, or any of its affiliates be liable for any punitive, exemplary, consequential or indirect damages that may be alleged to result in connection with, arising out of, or relating to, any Claims, this Proposal Letter, the Financing, the use or the proposed use of the

---

[3] Capitalized terms used in the section titled "Indemnification" will have the meaning assigned in the Proposal Letter.

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO ENTER INTO**
**PROPOSAL LETTER WITH GE ENERGY FINANCIAL SERVICES, INC.**
**REGARDING THE DEBTORS' PROPOSED EXIT FINANCING FACILITY**     **Page 8 of 10**
US 4722v.4

proceeds thereof, the Transaction, any other transaction contemplated by this Proposal Letter and any other transaction related thereto. Furthermore, none of GE Capital, or any of its affiliates shall have any liability for any damages arising from the use of information or other materials obtained through electronic, telecommunications or other information transmission systems.

**A.     Legal Authority**

16.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant, part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

17.     Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See*, *e.g., Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's judgment so long as there is a "legitimate business justification"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

18.     Sound business reasons exist for the Debtors' entry into the Proposal Letter with GE Capital. As discussed above, in the weeks preceding the filing of this Motion, EPL and Parkman Whaling met with numerous potential lenders. As a result of this process, GE Capital presented the best proposal for an Exit Facility. Not only are the proposed terms more favorable than certain of the Debtors' other options, but it is expected that GE will underwrite the entire Exit Facility, thus obviating the time and expense associated with syndicating the loan. The

Debtors believe that the proposed entry into the Proposal Letter is necessary for the Debtors to obtain an acceptable Exit Facility and, as such, is in the best interest of their estates and creditors.

## PRAYER

**WHEREFORE** the Debtors respectfully request this Court enter an order authorizing and approving the relief requested herein and granting such other and further relief to which the Debtors may be justly entitled.

Dated: July 24, 2009

                                              Respectfully submitted,

                                              **VINSON & ELKINS LLP**

By: /s/ *Paul Heath*
     Paul E. Heath, SBT #093555050
     Michaela C. Crocker, SBT #24031985
     Trammell Crow Center
     2001 Ross Avenue, Suite 3700
     Dallas, Texas 75201
     Tel: 214.220.7700
     Fax: 214.999.7787
     pheath@velaw.com
     mcrocker@velaw.com

and

Duston K. McFaul
1001 Fannin Street, Suite 2300
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
dmcfaul@velaw.com

**ATTORNEYS FOR THE DEBTORS**